UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PAUL R. MONTECINO, JR. #394305**                **CIVIL ACTION**

**versus**                                                                    **NO. 06-5685**

**BURL CAIN, WARDEN LSP, ET AL.**                **SECTION: "B" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Paul R. Montecino, Jr., is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 18, 2003, he was found guilty of attempted first degree murder in violation of La.Rev.Stat.Ann. § 14(27)30.[2] On November 13, 2003, he was found to be a third offender and was sentenced as such to a term of forty years imprisonment without benefit of probation, parole, or suspension of sentence.[3] On February 11, 2005, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[4] The Louisiana Supreme Court denied a related writ application without assigning reasons on June 3, 2005.[5]

On September 1, 2006, petitioner, through counsel, filed with the state district court an application for post-conviction relief.[6] That application was denied on September 25, 2006.[7]

Also on September 1, 2006, petitioner, through counsel, filed this federal application for *habeas corpus* relief.[8] In support of his application, petitioner claims that there was insufficient evidence to support his conviction under prior jurisprudence and the existing statutes.

---

[2] State Rec., Vol. II of II, transcript of June 18, 2003, p. 65; State Rec., Vol. II of II, minute entry dated June 18, 2003.

[3] State Rec., Vol. II of II, transcript of November 13, 2003, p. 12; State Rec., Vol. II of II, minute entry dated November 13, 2003.

[4] State v. Montecino, 906 So.2d 450 (La. App. 1st Cir. 2005).

[5] State v. Montecino, 903 So.2d 456 (La. 2005) (No. 2005-K-0717); State Rec., Vol. I of II.

[6] State Rec., Vol. I of II.

[7] State Rec., Vol. I of II, Reasons Denying Post Conviction Relief Application dated September 25, 2006.

[8] Rec. Doc. 1.

The state contends that petitioner's federal application is untimely.[9] This Court disagrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[10]

As noted, on June 3, 2005, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction and sentence. For AEDPA purposes, his conviction became "final" ninety (90) days later when his period expired for seeking a writ of certiorari from the United States Supreme Court. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on September 1, 2005, and expired one year later on September 1, 2006. Because petitioner's federal application was filed on September 1, 2006, it was timely filed. Further, because the state concedes that petitioner exhausted his state court remedies,[11] the Court will address the merits of his claim.

---

[9] Rec. Doc. 7.

[10] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

[11] Rec. Doc. 7, p. 8.

## Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeals summarized the facts

of this case as follows:

> On September 7, 2001, Rex D. Gott, an inmate at the St. Tammany Parish Jail, executed a request form that included the following language: "I have some information about a murder. The man that comited (sic) the murder wants me to kill the only whitnes (sic) against him." That same day, Captain Greg Longino, who was the assistant warden at the St. Tammany Parish Jail, received the request form and met with Gott. According to Gott, the defendant, who was also an inmate at the St. Tammany Parish Jail, ultimately informed Gott that he shot Albert Hildebrand and that he wanted Gott to kill Maria Wekawitz, the only witness to the shooting. The defendant offered Gott $10,000.00 in exchange for the murder of Wekawitz. The defendant drafted a map that included places where Wekawitz frequented. After a brief meeting with Gott, Longino contacted the detective's division of the St. Tammany Parish Sheriff's Office.
> Sergeant Brian Ocall of the St. Tammany Parish Sheriff's Office met with Gott in the warden's office at the parish jail. Ocall made arrangements for Gott to return to the tier while wearing a recording device. Gott agreed to wear the device and, at approximately 3:30 p.m., returned to the tier where the defendant was located. Ocall was able to observe Gott and the defendant via the jail monitoring system. When Gott returned to the tier, he told the defendant that he was "going home, that I had made a PR bond." During the recorded conversation, Gott specifically told the defendant that he needed some "confirmation cash." Gott further stated as follows, "I'm saying, I'm just saying I need that f------ money. I need some money up front, if I'm going to wax this f------ chick for you, I need some money up front, you know." In response, the defendant stated as follows,
>
>> Whatever. I'm going to give you, I'm going to give you enough to get started. I'm going to give you

>maybe enough for a room, enough for a nice outfit to wear so you can fool her and enough for a f------ room to pull it off. And enough to get some cocaine and that's all I can do dude.

The defendant also questioned Gott concerning the whereabouts and the contents of the map. The defendant presented Gott with a note containing the name, address, and contact number for an individual, later identified as Robert Barron, whom Gott was supposed to contact when he was released. The defendant also jotted "$300.00" and "1 Dress outfit" on the note and signed his name. At approximately 4:15 p.m., Gott returned to the warden's office and allowed Ocall to recover the audiotape and recording device. Gott was released from jail on that date. According to Gott, the defendant planned to contact Barron and arrange for him to provide Gott with money and clothing. The defendant stated that he would not inform Barron of the reason that he needed to give the money to Gott. A telephone call from the jail to Barron's residence was documented to have taken place on September 7 at 5:40 p.m.

On September 13, 2001, Ocall met with Gott and arranged for him to contact Barron using the information that the defendant had provided. Gott ultimately reached Barron and, during a recorded conversation, Gott and Barron made plans to meet on September 15, the following Saturday. Further telephone calls from the jail to Barron's residence were documented to have taken place on September 13 at 6:26 p.m. and 6:49 p.m.

On Saturday, September 15, in the presence of Ocall, Gott contacted Barron by mobile phone and confirmed their meeting during the recorded conversation. At approximately 11:00 a.m., Gott, along with an undercover police officer, met with Barron in the French Quarter in New Orleans, Louisiana at Barron's residence. Gott was equipped with a recording and listening device. During this meeting, Barron gave Gott $100.00 and warned him that the defendant was not trustworthy and would "get you in trouble." Barron also stated as follows, "Here you go now, that's the best I can do, I don't want any part of this, I don't want to know anything about it. Let me tell you once more, if your (sic) smart you won't have anything to do with it."

After Gott and the undercover police officer vacated Barron's residence, Ocall and a police sergeant contacted Barron. The

- 6 -

defendant was ultimately charged with the attempted murder of Maria Wekawitz.[12]

### Petitioner's Claim

Petitioner claims that there was insufficient evidence to support his conviction under prior jurisprudence and the existing statutes. In the last reasoned state court judgment addressing petitioner's claim, the Louisiana Fourth Circuit Court of Appeal rejected the claim, holding:

> In his sole assignment of error, the defendant avers that the trial court erred in finding him guilty of attempted first degree murder when there was insufficient evidence that the defendant did or omitted an act for the purpose of and tending directly toward the accomplishing of his object. The defendant contends that all of the evidence adduced at the trial pertained to the act of solicitation and constituted nothing more than evidence of preparation.
> 
> The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in La.Code Crim. P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, 2002-1492, p. 5 (La.App. 1st Cir. 2/14/03), 845 So.2d 416, 420.
> 
> Louisiana Revised Statutes 14:27(A) provides:
> 
>> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under

---

[12] State v. Montecino, 906 So.2d 450, 451-52 (La. 2005).

> the circumstances, he would have actually accomplished his purpose.
>
> Louisiana Revised Statutes 14:30(A)(4) provides in part:
>
> First degree murder is the killing of a human being:
>
> (4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.

The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La. 1982). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant; or by inference from circumstantial evidence, such as defendant's actions or facts depicting the circumstances. State v. Cummings, 99-3000, p. 3 (La.App. 1st Cir. 11/3/00), 771 So.2d 874, 876.

This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. Cummings, 99-3000 at p. 3, 771 So.2d at 876. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Cummings, 99-3000 at p. 3, 771 So.2d at 876.

Sergeant Ocall was the lead detective assigned to investigate the murder of Hildebrand. According to Ocall, three people were present when Hildebrand was shot: Hildebrand, Wekawitz, and the defendant. Ocall took a statement from Wekawitz wherein she identified the defendant as the shooter. The defendant was arrested and charged by a grand jury indictment with the second degree murder of Hildebrand. While imprisoned at the St. Tammany Parish Jail, the defendant made contact with Gott. According to Gott, the defendant initially gave him a factual account of the shooting of Hildebrand wherein Wekawitz was the shooter. The defendant later stated that he was the shooter and that Wekawitz was the only witness to the shooting. The defendant offered Gott $10,000.00 to

- 8 -

kill Wekawitz. Gott stated that he never intended to kill Wekawitz, but did not tell the defendant that.

Herein, the defendant does not contest the sufficiency of the evidence as to the specific intent to kill. The defendant's sole argument is that there is insufficient evidence of the commission of an overt act tending toward the accomplishment of the goal. The defendant claims that providing a map and arranging for payment, even if taken as credible facts, constitute nothing more than preparation.

In finding the defendant guilty, the trial court, in part, stated as follows,

> Clearly, Montecino had specific intent to commit the first degree murder of Maria Wekawitz. He asked Gott to kill her, provided a map, set up a meeting between Gott and Barron so Gott could receive what has been described as good faith money. The fact that a murder was never completed does not negate the fact that the defendant attempted to commit the crime and took distinct steps towards accomplishing his object. The actions that Montecino took were more than mere preparation. The defendant put in motion by his own acts a course that very well would have led to the death of Maria Wekawitz if Gott had not (sic) followed his instructions.

We agree with the trial court's reasoning. The defendant concocted a plan wherein he negotiated with Gott, the would-be hit man, for Wekawitz's murder in exchange for $10,000.00. The defendant drafted and provided Gott with a map that detailed the location of areas frequented by Wekawitz. The defendant agreed to arrange for Gott to receive money from Barron to be used in the perpetration of the murder of Wekawitz. The defendant provided Gott with contact information for Barron. During the initial recorded telephone conversation between Gott and Barron, Barron confirmed that the defendant had contacted him from jail and had informed him that Gott would be contacting him. Via the defendant's arrangements, Gott met with Barron and received $100.00 in cash to be used in the perpetration of the murder. Thus, the defendant committed several overt acts tending directly toward the accomplishment of the murder of Wekawitz.

> The acts outlined above constitute more than mere preparation. The State presented sufficient evidence that the defendant had the specific intent to kill Wekawitz, offered something of value to someone else to handle the commission of the murder, and performed acts that tended directly towards the accomplishing of his object. It is immaterial whether, under the circumstances, the defendant's purpose would have actually been accomplished. This assignment of error is without merit.[13]

In the instant case, petitioner's claim is not strictly one challenging the sufficiency of the evidence. He does not contest that he committed the actions proven at trial. Instead, the gist of petitioner's claim is that he was not afforded "fair warning" that his undisputed actions could constitute attempted first degree murder.

Petitioner's claim is founded on the United States Supreme Court's decision in Bouie v. City of Columbia, 378 U.S. 347 (1964). In Bouie, the defendants staged a "sit in" of a segregated lunch counter. When they refused to leave, they were charged with and subsequently convicted of criminal trespass, which by its terms forbade only "entry upon the lands of another ... after notice ... prohibiting such entry ...." Although it was undisputed that defendants did not violate the specific terms of that statute, the South Carolina Supreme Court nevertheless affirmed their convictions because, *after* defendants' actions, the statute had been judicially construed as encompassing the broader situation where a person simply remains on the premises of another after receiving notice to leave. The United States Supreme Court reversed the convictions on due process grounds, noting:

> When a[n] ... unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability

---

[13] State v. Montecino, 906 So.2d at 453-54. The Louisiana Supreme Court denied a related writ application without assigning reasons on June 3, 2005. State v. Montecino, 903 So.2d 456 (La. 2005) (No. 2005-K-0717); State Rec., Vol. I of II.

> for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.

Id. at 354-55.  The Court held:  "If a judicial construction of a criminal statute is *unexpected and indefensible* by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."  Id. at 354 (emphasis added) (internal quotation marks omitted); see also Rogers v. Tennessee, 532 U.S. 451, 461 (2001).

In the instant case, petitioner opines that he could not have foreseen that his actions could constitute attempted first degree murder.  He argues that Louisiana law specifically provides that "[m]ere preparation to commit a crime shall not be sufficient to constitute an attempt ...."  La.Rev.Stat.Ann. § 14:27(B)(1).  He essentially concedes that if he performed an "overt act" tending toward actual commission of the murder, he would be guilty of attempted first degree murder; however, he contends that his actions here constituted nothing more than "mere preparation" to commit the crime and, thus, the attempt statute does not apply.  In that vein, petitioner's counsel further argues that his review of Louisiana jurisprudence has not uncovered any cases where a factual scenario similar to the one in the instant case has led to a prosecution under the attempt statute.  He argues that the present factual scenario would fit better with a charge of inciting a felony under La.Rev.Stat.Ann. § 14:28 or solicitation of murder under La.Rev.Stat.Ann. § 14:28.1.

The fact that a review of the jurisprudence has uncovered no prosecutions under the attempt statute stemming from a similar factual scenario is not determinative.  "When ... a statute specifically prohibits certain conduct, a dearth of specific case law and legislative history that relates

- 11 -

the origin of the statute to a particular factual predicate do not establish a Due Process violation." Beets v. Johnson, 180 F.3d 190, 194 (5th Cir. 1999).

Rather, as noted in Bouie, the pertinent inquiry is whether it would be *unexpected and indefensible* to construe the statute to encompass the factual scenario at issue. The undersigned finds that, in the instant case, it would not. Here, the petitioner was incarcerated and so obviously could not commit the desired murder himself. Instead, the murder could only be accomplished only through a third person. Toward that end, petitioner hired a supposed hit man, arranged to have him paid a down-payment for the murder, and provided him with a map indicating where the intended victim could be located and killed. Petitioner took every action of which *he* was capable, in light of his incarcerated state, to accomplish the murder of the victim. Under those facts, it was neither unexpected nor indefensible for petitioner to be charged with and convicted of attempted first degree murder.

The undersigned likewise finds unavailing petitioner's argument regarding the applicability of the statutes against inciting a felony and soliciting a murder. Unquestionably, petitioner *could have been* prosecuted for one of those lesser crimes. However, it is not uncommon for a perpetrator's actions to run afoul of more than a single criminal statute, and it is within the prosecutor's discretion to decide, based on the facts of the particular case, under which of the possible provisions the charges should be brought. La.Rev.Stat.Ann. § 14:4; La.C.Cr.P. art. 61; State v. Neal, 500 So.2d 374, 378 (La. 1987); State v. Juluke, 374 So.2d 1259 (La. 1979). Under the egregious facts of this case, the undersigned finds that it was not improper for the prosecutor to proceed on the more serious charge of attempted first degree murder. As noted, in light of his

incarceration, petitioner took every action within his power to ensure that murder would occur, and the intended victim remains alive due solely to the fact that the hit man refused to participate in petitioner's scheme.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Paul R. Montecino, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-seventh day of December, 2006.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**